IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES T. DAVIS,

        Plaintiff,                        No. 2:05-cv-1898-JAM-EFB P

    vs.

D.L. RUNNELS, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. This action proceeds on the retaliation claims in plaintiff's second amended complaint against defendants Amero, Hougland, Von Rader, Miranda, Runnels, and Simmerson. *See* ECF No. 16 (Second Am. Compl.); ECF No. 71 (F&Rs re Defs.' Mot. to Dism.), ECF No. 77 (Order adopting F&Rs). The defendants have moved for summary judgment. ECF No. 82. For the reasons stated below, the motion should be granted in favor of defendants Miranda and Runnels, and denied as to defendants Amero, Hougland, Von Rader, and Simmerson.

**I.    The Complaint**

        According to the allegations in the complaint, plaintiff prepared an administrative appeal after prison officials improperly searched his cell and confiscated his property. ECF No. 16 ¶ 11. Plaintiff claims that instead of processing the appeal, defendant Amero retaliated against

1

plaintiff by cancelling it. *Id.* ¶¶ 11, 20.  Plaintiff alleges that at the hearing on the appeal, defendants Amero, Von Rader, and Hougland repeatedly threatened to search plaintiff's cell and improperly confiscate more of plaintiff's "allowable" personal property if plaintiff did not "shut-up." *Id.* ¶ 11.  Plaintiff claims he feared that defendants would follow through on their threats, and was therefore unable to assert his First Amendment rights at the hearing. *Id.*

Next, plaintiff alleges that defendant Miranda tried to get plaintiff's next-door neighbor to uncover his cell window by cutting off the power and water to the cell. *Id.* ¶ 13.  Consequently, plaintiff claims that the power and water in his own cell was turned off. *Id.*  Plaintiff claims that in retaliation for filing a complaint with the associate warden about this, Miranda stopped giving plaintiff extra toilet paper and filed a fraudulent Rules Violation Report accusing plaintiff of being verbally abusive. *Id.* ¶¶ 13, 20.  Plaintiff claims he wrote letters to defendant Runnels, the warden, about this issue. *Id.* ¶ 14.  In response, defendant Simmerson allegedly had a correctional officer escort plaintiff out of his cell in waist chains to the yard, at 8 or 9 o'clock in the evening. *Id.*  Plaintiff claims that he was met on the yard by Simmerson, who stated that plaintiff was not to write the warden any letters, and that if plaintiff filed another complaint he would "bring it" to plaintiff. *Id.*  According to plaintiff, he interpreted Simmerson's remark to be a threat of physical harm that caused him to fear for his safety. *Id.* ¶¶ 14, 20.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

1  case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a
2  circumstance, summary judgment must be granted, "so long as whatever is before the district
3  court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

4  To defeat summary judgment the opposing party must establish a genuine dispute as to a
5  material issue of fact. This entails two requirements. First, the dispute must be over a fact(s)
6  that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S.
7  at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing
8  law will properly preclude the entry of summary judgment."). Whether a factual dispute is
9  material is determined by the substantive law applicable for the claim in question. *Id.* If the
10 opposing party is unable to produce evidence sufficient to establish a required element of its
11 claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning
12 an essential element of the nonmoving party's case necessarily renders all other facts
13 immaterial." *Celotex*, 477 U.S. at 322.

14 Second, the dispute must be genuine. In determining whether a factual dispute is genuine
15 the court must again focus on which party bears the burden of proof on the factual issue in
16 question. Where the party opposing summary judgment would bear the burden of proof at trial
17 on the factual issue in dispute, that party must produce evidence sufficient to support its factual
18 claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
19 *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit
20 or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
21 for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to
22 demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such
23 that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,
24 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

25 The court does not determine witness credibility. It believes the opposing party's
26 evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

4

1 *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the
2 proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*
3 *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,
4 dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts
5 at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441
6 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational
7 trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,
8 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any
9 reasonable inferences that might be drawn from it could not support a judgment in favor of the
10 opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any
11 genuine dispute over an issue that is determinative of the outcome of the case.

12      Defendants' motion for summary judgment included a notice to plaintiff informing him
13 of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil
14 Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952,
15 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849
16 F.2d 409 (9th Cir. 1988).

17 **III.   Analysis**

18      As an initial matter, defendants argue that their motion should be granted because
19 plaintiff's opposition does not comply with Local Rule 260(b), which states that any party
20 opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of
21 Undisputed Facts and admit those facts that are undisputed and deny those that are disputed,
22 including with each denial a citation to the particular portions of any pleading, affidavit,
23 deposition, interrogatory answer, admission, or other document relied upon in support of that
24 denial."  E.D. Cal. L. R. 260(b).  Plaintiff has, however, included citations to the record, which
25 /////
26 /////

he contends support each of his purported "undisputed" and "disputed" facts. *See* ECF No. 93 at 2-9.[1]  Thus, plaintiff's opposition complies with the fundamental requirement that he specifically identify the facts he disputes and annotate with citations to the record the specific evidence on which he relies.  Given that plaintiff's brief satisfies the core purpose for requiring an annotated statement of facts that sufficiently identifies the facts that plaintiff disputes, defendants' argument as to this ground simply exalts form over substance.

Defendants have also filed objections to Attachments 1, 2, and 3 to plaintiff's opposition. ECF No. 95-2.  Defendants' objection to the declaration contained within Attachment 1 as irrelevant is overruled; defendants' objection to the inmate appeals and responses thereto in Attachment 1 as inadmissible hearsay is also overruled.  Although the documents may contain some hearsay, they also contain many statements that are not hearsay.  The particular statements upon which plaintiff relies may very well be admissible nonetheless or may not be hearsay at all, depending on the purpose for which the statement is offered.  "The court is not inclined to comb through these documents, identify potential hearsay, and determine if an exception applies - all without guidance from the parties." *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1124 (2006).  Defendants' hearsay objection to the declaration of Antonio Haliburton contained within Attachment 2, however, is sustained, as Haliburton did not witness the interaction he describes, but merely repeats what was told to him.  Lastly, defendants' objections to the inmate declarations contained within Attachment 3, as improperly offering legal conclusions or as irrelevant, are also sustained.

Defendants also object to plaintiff's reliance on the allegations in his complaint.  *See* ECF No. 95-1.  This objection is overruled.  The allegations, which are verified, may serve as an

---

[1] To the extent plaintiff intended this May 31, 2013 filing, labeled "Statement of Undisputed & Disputed Facts & Separate Motion for Summary Judgment," to serve as a dispositive motion, it is denied, as the December 21, 2012 dispositive motions deadline has long since passed, and because the filing contains no argument and fails to comply with the requirement of Federal Rule of Civil Procedure 56(a) that the party moving for summary judgment identify each claim on which summary judgment is sought.

1    affidavit for purposes of summary judgment if they are based on personal knowledge and set
2    forth the requisite facts with specificity. *See Human Life of Washington Inc. v. Brumsickle*, 624
3    F.3d 990, 1022 (9th Cir. 2010).
4        Finally, before reaching the substance of defendants' motion, the court addresses
5    plaintiff's contentions that the declarations submitted by defendants in support of their motion
6    should be not be given any weight in light of defendants' "evasive" and "bad faith" responses to
7    his discovery requests, and because they are "uncorroborated & self-serving." ECF No. 94 at
8    10-11. Plaintiff was previously afforded the opportunity to challenge defendants' discovery
9    responses; those motions were denied on May 13, 2013. *See* ECF No. 91 (Order denying
10   plaintiff's motion to compel and Rule 56(d) motion to defer ruling on summary judgment
11   motion). Plaintiff does not request reconsideration of the order denying his discovery motions,
12   nor does he present sufficient grounds for doing so. *See* E.D. Cal. L. R. 230(j)(3)-(4) (requiring
13   that a motion for reconsideration state "what new or different facts or circumstances are claimed
14   to exist which did not exist or were not shown upon such prior motion, or what other grounds
15   exist for the motion," and "why the facts or circumstances were not shown at the time of the
16   prior motion"). Moreover, a party moving for summary judgment may support its motion
17   through sworn affidavits, which are "made on personal knowledge, set out facts that would be
18   admissible in evidence, and show that the affiant . . . is competent to testify on the matters
19   stated." Fed. R. Civ. P. 56(c)(4); *see also Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th
20   Cir. 2001) ("This circuit has held that self-serving affidavits are cognizable to establish a
21   genuine issue of material fact so long as they state facts based on personal knowledge and are
22   not too conclusory."). Plaintiff does not argue that defendants' declarations fail to comply with
23   these requirements. Nor does he present an otherwise proper basis for excluding them. Thus,
24   plaintiff's requests to exclude defendants' declarations and to compel further discovery, are
25   denied.
26   /////

Defendants' motion, as it relates to the substance of plaintiff's retaliation claims, is addressed below.

### A.     Qualified Immunity

Defendants argue that they should be granted summary judgment based on qualified immunity.  In analyzing an assertion of qualified immunity, the court considers (1) whether the facts show a constitutional violation and (2) whether the constitutional right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first). Qualified immunity is an affirmative defense and the burden of proving the defense lies with the official asserting it.  *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992).  Here, defendants present a boilerplate qualified immunity argument that refers to "defendants" who are not and have never been, parties to this lawsuit, as well as to "gang validation proceedings" and other circumstances that have no relevance to this lawsuit.  *See* ECF No. 82-2 at 12. Whatever was intended by this argument, defendants have failed to demonstrate they are entitled to qualified immunity.

### B.     Defendants Amero, Von Rader, and Hougland

Plaintiff claims that defendants Amero, Von Rader, and Hougland threatened him with cell searches and property confiscation if he did not "shut-up" during an interview on an administrative appeal regarding a search of his cell that was performed on February 22, 2005. ECF No. 16 ¶ 11.  Plaintiff also claims that Amero retaliated against him by cancelling his appeal. *Id.*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

/////

legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).[2] Conduct protected by the First Amendment includes communications that are "part of the grievance process." *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4. (9th Cir. 2009).

Defendants contend that plaintiff's appeal was cancelled because of his failure to cooperate at the March 20, 2005 interview regarding his appeal. *See* ECF No. 16, Attach. 1 at 5 (response to plaintiff's appeal, indicating it was cancelled at March 20, 2005 interview, when plaintiff refused to provide the interviewers with a chrono authorizing him to possess paperclips); ECF No. 82-9, Ex. A (Plaintiff's deposition transcript, hereafter "Pl.'s Dep.") at 34:9-25 (admitting that failure to cooperate was the stated reason for cancelling the appeal). In response, plaintiff points to the sworn allegations in his complaint that on March 20, 2005, Amero ordered a correctional officer to verify that plaintiff had the chrono, and that the correctional officer did, in fact, verify its existence. *See* ECF No. 16 ¶ 11; *see also* ECF No. 93, Attach. 1 at 7. Plaintiff also refers to his deposition testimony, where he testified that Amero cancelled his appeal knowing that plaintiff had the required chrono. Pl.'s Dep. at 41:1-9. If a jury were to credit that testimony, it could reasonably find that plaintiff had the requisite authorization for possessing the paperclips and that Amero knew that. Viewing this evidence in the light most favorable to plaintiff, it is sufficient to raise genuine disputes as to whether Amero was aware that plaintiff had the required chrono, and whether Amero's cancelling of the appeal thus, lacked a legitimate penological purpose. Given the proximity in time to plaintiff's exercise of his rights, and absent a legitimate penological purpose, a jury could reasonably infer a retaliatory motive. While a jury might reasonably reject plaintiff's version of what occurred, the credibility assessment is for the jury to resolve at trial.

Next, defendants contend that there is no actual evidence that defendants Amero, Von Rader, and Hougland made any threats to plaintiff, let alone threats in retaliation for plaintiff's

---

[2] Alternatively to the fourth element, the prisoner may simply show that he suffered "harm that is more than minimal." *Id.* at 567 n.11.

9

filing of an administrative appeal.  However, plaintiff refers to the sworn allegation in his complaint, that during the interview, these defendants "repeatedly threatened" to "come into plaintiff's cell, re-search it, and confiscate other items of plaintiff's allowable personal property if plaintiff did not shut-up during the appeal hearing." ECF No. 16 ¶ 11.  Plainly, there is a material dispute as to whether defendants threatened plaintiff.  While plaintiff admitted at his deposition that Von Rader did not actually make the alleged threats, he did state that Von Rader nodded his head in support thereof, and "agreed" to "go back and search [plaintiff's] cell." Pl.'s Dep. at 25:25-26-10.  This evidence is sufficient to demonstrate a triable issue as to whether Von Rader participated in the alleged retaliation. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made").

There is also a dispute as to whether the alleged threats served a retaliatory purpose. Retaliatory motive may be shown by defendants' knowledge of the protected activity, defendants' conduct and statements, and the timing of the allegedly retaliatory act. *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988).  Here, it is implicit from plaintiff's allegations that defendants, who were interviewing plaintiff about his appeal, were aware of plaintiff's protected activity.  Defendants allegedly told plaintiff to "shut up" while pursuing his appeal through the interview process, and allegedly threatened to "re-search" plaintiff's cell, in response to plaintiff's appeal regarding an earlier cell search.  If plaintiff's account is credited, it can reasonably be inferred from these alleged threats that defendants were motivated by plaintiff's pursuit of his administrative appeal regarding the earlier search.  Further, the timing of the alleged threats (during the interview regarding plaintiff's appeal) supports the inference of a retaliatory purpose. *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (prison official's alleged statements alluding to protected activity as a justification for adverse action raised triable issue as to retaliatory motive when combined with suspect timing).

10

Defendants contend that plaintiff's claim must nevertheless fail because "[c]ell searches for contraband and weapons are common practice in the prison system and clearly serve a legitimate penological interest in protecting both correctional staff and inmates," and because plaintiff cannot establish that "additional cell searches of an inmate would chill a reasonable person." ECF No. 82-2 at 7. These arguments are beside the point. Plaintiff does not allege that defendants threatened him with a legitimate cell search. Plaintiff claims that defendants threatened to search his cell and seize his "allowable" personal property if plaintiff did not stop talking. *See* ECF No. 16 ¶ 11. Plaintiff claims defendants' threats prevented him from speaking during the hearing on his appeal. *Id.* ¶ 11.

Further, defendants argue that plaintiff cannot demonstrate that the defendants took any action "that was clearly and significantly adverse" to plaintiff. ECF No. 82-2 at 7-8. The proper inquiry, however, is whether, "'the record, taken in the light most favorable to the plaintiff, reveals statements by the defendant that a reasonable factfinder could . . . interpret as intimating that some form of punishment or adverse regulatory action would follow.'" *Brodheim*, 584 F.3d at 1270 (quoting *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003) (per curiam)). Moreover, "[t]he adverse action need not be an independent constitutional violation," and the "mere threat of harm can be an adverse action." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations and quotations omitted); *see also Brodheim*, 584 F.3d at 1270 (a threat need not be "explicit and specific to constitute an adverse action"). Viewed in the light most favorable to plaintiff, the evidence allows for the inference that defendants' alleged threats were adverse to plaintiff for purposes of his First Amendment claim.

Finally, defendants contend that plaintiff's First Amendment activities have not been chilled because "[p]laintiff continues to prolifically file writs, grievances, and appeals contending he is the victim of retaliation . . . ." ECF No. 82-2 at 10. The argument does not demonstrate the absence of a genuine dispute for trial, as a retaliation plaintiff need not demonstrate that his speech was "actually inhibited or suppressed." *Rhodes*, 408 F.3d at 569.

11

The Ninth Circuit explained in *Rhodes* that such a requirement would unjustly allow a defendant to escape liability simply because the plaintiff was determined to persist in his protected activity. *Id.* at 568-69. Instead, the plaintiff must simply show that the defendant's conduct would chill or silence a person of ordinary firmness from future protected conduct. *Id.*; *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (stating that a plaintiff does not need to demonstrate that his exercise of First Amendment rights was chilled, but instead that defendants intended to interfere with plaintiff's exercise of rights).

### C. Defendant Miranda

Plaintiff claims that in retaliation for filing a complaint against Miranda for turning off the water and power to plaintiff's cell, Miranda denied plaintiff extra toilet paper and filed a fraudulent Rules Violation Report accusing plaintiff of being verbally abusive. ECF No. 16 ¶¶ 13, 20.[3] Miranda argues that there is no evidence, other than plaintiff's unsupported opinion, that Miranda's alleged actions were retaliatory. Miranda also argues there is no evidence that plaintiff made any complaints against him prior to the April 14, 2005 incident on which he based his Rules Violation Report.

Plaintiff responds with a declaration from an inmate witness, Antonio Haliburton. ECF No. 93, Attach. 3 at 17. Haliburton states that he observed the interaction between plaintiff and Miranda on April 14, 2005. *Id.* He states that Miranda warned plaintiff that he would be charged with assault if plaintiff touched him, and that Miranda also searched plaintiff's cell. *Id.* It is Haliburton's opinion that "the search and threat of intimidation to inmate Davis [were] in retaliation for filing a complaint for turning off the water and electric[ity] in his cell." *Id.*

---

[3] In his opposition, plaintiff claims to also be proceeding on a claim that Miranda conducted a punitive cell search in violation of the Eighth Amendment. *See* ECF No. 93 ¶ 18; ECF No. 94 ¶ 15 (referring to the vague and conclusory allegation in the complaint that Miranda "conducted a punitive cell search in violation of the 8th amend[ment] under the ruse of looking for toilet paper."). This action does not proceed on such a claim, as all claims, except for the retaliation claims against defendants Amero, Hougland, Von Rader, Miranda, Runnels, and Simmorson, have been dismissed. *See* ECF No. 71 at 1; ECF No. 77. Although plaintiff was granted leave to amend, he chose not to amend his complaint.

12

The Haliburton declaration suggests that Miranda's alleged retaliatory actions were (1) warning plaintiff that he would be charged with assault if plaintiff touched him and (2) searching plaintiff's cell. However, plaintiff fails to demonstrate how Miranda's alleged warning constitutes an adverse action, or that the alleged cell search was retaliatory. *See* ECF No. 93, Attach. 3 at 13 (Miranda's April 14, 2005 Rules Violation Report, indicating that Miranda searched plaintiff's cell to confirm whether plaintiff was out of toilet paper). Although plaintiff claims that the cell search was done "under the ruse of looking for toilet paper," he submits no evidence demonstrating that the search actually lacked a legitimate penological purpose. *See* ECF No. 16 ¶¶ 13, 20; ECF No. 93, Attach. 3 at 32 (plaintiff's April 18, 2005 administrative appeal, claiming that Miranda's alleged threat and cell search were "harassment" in response to plaintiff's request for toilet paper); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (a prisoner plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct he complains of"). Moreover, Haliburton does not set forth any basis for personal knowledge as to whether plaintiff ever filed a complaint regarding the water and electricity in his cell, and thus, his declaration fails to show that plaintiff had engaged in protected activity prior to Miranda's allegedly retaliatory conduct. Nor does Haliburton offer any facts to support his opinion that Miranda's alleged conduct was retaliatory.

Plaintiff also submits the declaration of inmate Michael D. Harris, who states that on April 14, 2005, he heard plaintiff tell Miranda he was going to file a complaint against him "for harassment and a punitive cell search." *Id.* at 16. Harris's declaration as to plaintiff's statement does not create a material dispute for trial. More to the point, assuming plaintiff testifies at trial that he made that statement to Miranda, the statement does not establish a retaliatory motive for the search of the cell that Miranda was already in the process of executing. Furthermore, plaintiff's claim alleges that Miranda retaliated against him for filing a complaint about the water and power in his cell, not for informing Miranda that he intended to file a complaint about

/////

Miranda's alleged harassment or punitive cell search.  Indeed, the latter would make no sense because Miranda was already conducting the search at the time that plaintiff made the statement.

Harris also states that he was present during the incident on which Miranda's Rules Violation Report is based, and that Miranda's accusations therein are false. *Id.*  This evidence, however, is not sufficient to defeat defendants' motion, given plaintiff's failure to point to any evidence showing that Miranda knew of plaintiff's alleged complaint regarding the water and electricity. *See Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (to raise a genuine issue of material fact as to whether a defendant took an adverse action because of a plaintiff's protected conduct, a plaintiff must produce evidence that the defendant knew of the plaintiff's protected conduct and either (1) the protected conduct and adverse action were close in time, (2) the defendant expressed opposition to the protected conduct, or (3) the defendant's proffered reason for the adverse act was false or pretextual).

Plaintiff also points to his deposition testimony, where he states that after he spoke with the associate warden, Miranda stopped giving him toilet paper. Pl.'s Dep. at 67:12-24.  While that testimony, if credited, would establish the requisite proximity in time of the alleged conduct and the exercise of a protected right,  plaintiff nonetheless fails to demonstrate that Miranda was aware of plaintiff's conversation with the associate warden, or that any other facts exist that would raise an inference that Miranda's alleged denial of toilet paper had a retaliatory motive. *See Pratt*, 65 F.3d at 807-09 (the timing of adverse actions alone is not sufficient to support the inference of a retaliatory motive; a prisoner must show that there were no legitimate correctional purposes for conduct alleged to be retaliatory).

Plaintiff has failed to offer any evidence supporting his claim that defendant Miranda denied him extra toilet paper or issued a Rules Violation Report in retaliation for plaintiff's complaint about Miranda turning off the water and power to plaintiff's cell.  Thus, plaintiff fails to demonstrate the existence of a genuine issue of material fact for this claim, and summary judgment in favor of Miranda is appropriate.

### D. Defendants Runnels and Simmerson

Plaintiff alleges that on March 11, 2005, at the direction of defendant Runnels, defendant Simmerson met plaintiff in the yard around 8 or 9 o'clock at night and threatened to "bring it" if plaintiff filed another complaint. ECF No. 16 ¶¶ 14, 20. Plaintiff allegedly interpreted Simmerson's remarks as a threat of physical harm. *Id.* Defendants contend there is no evidence to support these allegations.

Simmerson submits a sworn declaration stating that in 2005, his work shift was Second Watch, which is from 6:00 a.m. until 2:00 p.m. ECF No. 82-5 ¶ 3. Simmerson attests that he did not have plaintiff escorted from his cell as alleged in the complaint, as he "would not have been working at that time." *Id.* ¶ 4. In response, plaintiff notes that Simmerson's declaration is silent as to his "over time for the month of March 2005," and points to the sworn allegations in his complaint that his alleged encounter with Simmerson occurred between 8 p.m. and 9 p.m. ECF No. 93 ¶ 9. Simmerson does not specifically state what shift he worked, if any, on March 11, 2005. Nor does Simmerson deny ever working an evening shift in all of 2005. Drawing all reasonable inferences in favor of plaintiff, there is a genuine dispute as to whether Simmerson was working on the evening of March 11, 2005, and whether he met with plaintiff as plaintiff claims.

Simmerson also states that he never threatened plaintiff with violence for directly communicating with the warden regarding staff complaints. ECF No. 82-5 ¶ 5. In response, plaintiff points to the sworn allegations in his complaint that Simmerson said he would "bring it" to plaintiff if he did not stop filing appeals. ECF No. 95-1 ¶ 8. According to plaintiff, he felt like Simmerson was trying to intimidate him with physical harm, and believed that Simmerson would follow through on his threat. ECF No. 16 ¶¶ 14, 20. Simmerson does not specifically deny making this remark to plaintiff. He claims, however, that even if plaintiff interpreted his alleged remarks as a "threat," plaintiff's interpretation is not supported by the evidence, because plaintiff was just "being reminded . . . that he needed to use the proper administrative process for

his grievances." ECF No. 82-2 at 9. Simmerson fails to demonstrate why his alleged threat to "bring it," should have been interpreted as a mere "reminder" for plaintiff to comply with the administrative appeals process. Simmerson also fails to explain why plaintiff's interpretation of his alleged remark as a threat of harm was unreasonable. Drawing all reasonable inference in favor of plaintiff, the evidence is sufficient to create a genuine dispute as to whether Simmerson threatened plaintiff with physical harm in retaliation for plaintiff's pursuit of his administrative appeals. While a jury could reasonably resolve the conflicting testimony either way, there clearly is a genuine dispute over material issues of fact as to the claims against Simmerson. Thus, summary judgment in favor of Simmerson must be denied.

Plaintiff alleges that Runnels somehow authorized Simmerson's alleged threats in retaliation for plaintiff's filing of administrative appeals and writing letters. Defendants argue there is no evidence that Runnels was involved in the alleged threats by Simmerson. They contend that plaintiff's claim fails because Runnels' involvement is limited to his position as Warden. An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). In addition, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Plaintiff responds with evidence that as of May 3, 2005, Runnels was aware of plaintiff's use of the administrative appeals process and related correspondence. *See* ECF No. 93, Attach. 1 at 8. However, a juror could not reasonably infer from this evidence that Runnels had any involvement in the purported incident between plaintiff and Simmerson, almost two months earlier on March 11, 2005.

/////

Plaintiff also contends that Runnels was aware that "his agent" made threats against plaintiff "for filing a complaint upon defendant Simmerson" and that Runnels "took absolutely no steps to remedy, or even admit that his agent violated clearly established law." ECF No. 94 at 22-23. Even if the evidence supported plaintiff's argument, which it does not, it would be insufficient to demonstrate a triable issue as to whether Runnels retaliated against plaintiff. Accordingly, summary judgment should be granted in favor of Runnels.

**IV.    Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment be granted as to defendants Miranda and Runnels, and denied as to defendants Amero, Hougland, Von Rader, and Simmerson.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE